UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
EDDIE VEGA,                         )
                                    )
                Plaintiff,          )
                                    )       CIVIL ACTION
        v.                          )       NO. 11-10406-WGY
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner, Social Security       )
Administration,                     )
                                    )
                Defendant.          )
_____ )


MEMORANDUM OF DECISION

YOUNG, D.J.                                     March 30, 2012


I.    INTRODUCTION

     The plaintiff, Eddie Vega ("Vega"), brings this action

pursuant to section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), and 42 U.S.C. § 1383(c)(3), seeking judicial review of

the final decision of the Commissioner of Social Security (the

"Commissioner").  Vega challenges the decision of the

Administrative Law Judge (the "hearing officer") denying his

application for Supplemental Security Income ("SSI") benefits and

Social Security Disability Insurance ("SSDI") benefits.  He

argues that the hearing officer's decision was not based on

substantial evidence, and that the hearing officer failed

properly to apply the Avery factors in assessing Vega's residual

1

functional capacity.  Mem. Law Supp. Pl.'s Mot. Reverse Remand

Decision Comm'r Social Security ("Vega Mem."), ECF No. 15.  Vega

requests this Court reverse the decision of the Commissioner or,

in the alternative, remand the case to the Commissioner.  The

Commissioner filed a motion for an order affirming his decision.

Def.'s Mot. Affirm Comm'r's Decision, ECF No. 18.

**A.  Procedural Posture**

Vega filed for SSI and SSDI benefits on or around December

10, 2007, claiming that he had been disabled since September 11,

2002.  Admin. R. 125-31, 132-36.  On May 7, 2008, the Regional

Commissioner denied both of Vega's applications.  Id. at 73-82.

Upon request for reconsideration, Vega's applications were

reevaluated and again denied by the Regional Commissioner on

October 29, 2008.  Id. at 85-90.  Vega requested an oral hearing

on December 16, 2008, id. at 91, and such hearing took place

before a hearing officer on March 12, 2010, see id. at 27-68.

The hearing officer issued his decision on July 23, 2010, finding

that Vega was not disabled within the meaning of the Social

Security Act from the alleged onset date through the date of the

decision.  Id. at 11-21.

The hearing officer's decision was selected for review by

the Decision Review Board (the "Board"), but the Board did not

complete its review within the prescribed ninety-day period.  Id.

at 1-3.  Consequently, the hearing officer's decision became the

final decision of the Social Security Administration.  Id.; see 20 C.F.R. § 405.420(a)(2) (removed and reserved, 76 Fed. Reg. 24810 (May 3, 2011)).  On March 9, 2011, Vega filed the present action with this Court to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  See Compl. 1, ECF No. 1.

### B.  Background

#### 1.  Factual Background

Vega was born in 1963.  Vega Mem. 3.  He lives in Worcester and receives welfare benefits, food stamps, and state-sponsored health insurance.  Id.  Vega graduated from high school in Puerto Rico.  Id. at 4.  Spanish is his native language and his ability to communicate in English is limited.  Id.  Vega has previously worked as a bakery attendant and a supervisor at a window factory.  Admin. R. 37-38.  He has been married three times and has five children.  Id. at 332.  He has been imprisoned thirteen times for disturbing the peace and has a history of domestic violence and substance abuse.  Id.  Vega smokes two packs of cigarettes a day.  Id.

Vega suffers from a right arm and hand injury sustained when he punched his hand through a glass window.  Id. at 364.  In 2003, Vega fractured the middle and small fingers on his right hand after falling while putting on his pants.  Id. at 374, 376. Vega further injured his right hand and certain fingers when he

fell from a motorcycle in 2004. Id. at 368. Vega has persistent lower back pain, id. at 464, and also suffers from depression, anxiety, and other mental health conditions. See, e.g., id. at 262, 400. Vega has seen numerous medical professionals for his various medical conditions.

### 2. Medical Evidence

On March 22, 2004, Vega saw Harvey Clermont, M.D. ("Dr. Clermont") for a consultative physical exam for the purpose of a disability evaluation report. Id. at 235. Vega's primary complaint was his inability to use his right hand for most occupations. Id. Dr. Clermont noted Vega's history of a deep transverse laceration in the mid volar medial forearm, with injury to the muscles extending to the medial epicondylar area, and a possible ulnar nerve injury. Id. at 237. Dr. Clermont found that Vega was able to flex his right hand, but not able to perform a full fist grip. Id. Dr. Clermont concluded Vega had decreased ability to function with the right hand, for which he could compensate in part by using his left hand, but would need rehabilitative training before he was able to perform an occupation requiring use of his hands. Id. Dr. Clermont also noted that Vega was able to perform all of the activities of daily living. Id.

On July 7, 2004, Vega saw Thomas F. Breen, M.D. ("Dr. Breen") for injuries to his hands sustained in a motorcycle

accident.  Id. at 370.  Dr. Breen diagnosed fractures in the
right and little fingers of the right hand, and little finger of
the left hand.  Id.  Dr. Breen referred him to physical therapy
for range of motion, id. at 368-69, and later for strengthening
of the right hand, id. at 366-67.

On May 14, 2007, Vega saw Madeline Michelle Colon, M.D.
("Dr. Colon") who took a full medical history, including Vega's
ongoing struggle with anxiety and depression.  Id. at 332.  On
June 20, 2007, Vega went to a follow-up appointment with Dr.
Colon at which she prescribed BuSpar to treat his continuing
depression.  Id. at 262.  Dr. Colon referred Vega for a
psychiatric consult scheduled in July 2007, id., however, it is
unclear from the record whether Vega attended the consult.

On March 25, 2008, Vega saw Aaron M. Leavitt, M.D. ("Dr.
Leavitt") at Valley Psychiatric Service, Inc.  Id. at 400.  Dr.
Leavitt documented Vega's history that he was emotionally and
physically abused as a child, a substance abuser as an adult, and
a perpetrator of domestic violence as an adult.  Id.  Dr. Leavitt
also noted Vega's anxiety and depression, insomnia and memory
loss and past suicidal ideation.  Id.  Dr. Leavitt concluded that
Vega's mood was dysthymic.  Id. at 401.  Dr. Leavitt prescribed
Vega Paxil, Depakote, and Seroquel.  Id.

On March 27, 2008, Vega saw Jeremy B. Meltzer, M.D. ("Dr.
Meltzer") at the Meltzer Eye Care Center.  Id. at 358.  Dr.

Meltzer diagnosed Vega with glaucoma.  _Id._

On April 3, 2008, Vega was referred to C. Graham Campbell, Ph.D. ("Dr. Campbell") by the Massachusetts Rehabilitation Commission to undergo a psychiatric diagnostic interview for a disability evaluation report.  _Id._ at 276.  Dr. Campbell took a psychological history and noted depression, especially related to thoughts about his children, temper problems, insomnia and anxiety.  _Id._ at 277-78.  Vega scored far below expected levels of achievement on the Mini-Mental State Exam administered by Dr. Campbell, although Dr. Campbell acknowledged this may be due in part to a language barrier or possible illiteracy.  _Id._ at 278. Dr. Campbell concluded that the data from these tests was consistent with a diagnosis of Intermittent Explosive Disorder and that Vega had few coping mechanisms other than withdrawal, isolation and avoidance.  _Id._ at 279-80.  Dr. Campbell concluded that Vega's symptoms interfered with his ability to put forth the effort required to work successfully, but with the appropriate treatment of therapy and medication, Vega might be able to return to work at some point.  _Id._ at 280.

On the same day, Vega saw Ronald S. Jolda, D.O. ("Dr. Jolda") for a physical examination for the purpose of a disability evaluation report.  _Id._ at 281.  Dr. Jolda noted the laceration in Vega's right forearm, but stated Vega did not have any significant damage and that Vega used his right hand

normally.  Id. at 284.  Specifically, Dr. Jolda noted that Vega
had normal sensation over the arms and hands, normal strength,
handgrip, function, finger dexterity, and rapid alternating
movements in both his right and left hands.  Id.  Dr. Jolda
observed Vega was able to make a full, tight fist, and could
fully extend all of the fingers on his right hand.  Id.

On April 4, 2008, Vega saw David Nowell, Ph.D. ("Dr.
Nowell") for a psychiatric consult for the purposes of a
disability evaluation report.  Id. at 287.  After noting Vega's
history of depression, substance abuse, and difficulty
functioning, id. at 287-89, Dr. Nowell made a provisional
diagnosis of Intermittent Explosive Disorder.  He further
concluded that Vega suffered from depression and had problems
with anger management.  Id. at 289.  Dr. Nowell expressed concern
regarding Vega's successful transition to work, specifically
Vega's ability to receive supervision and interact with
customers.  Id. at 290.  Dr. Nowell stated, however, that Vega's
capacity for new learning appeared adequate and Vega's capacity
for simple attention and concentration appeared to be within
normal limits.  Id.

On May 14, 2008, Vega saw Dr. Colon, complaining of skin
discoloration on his left leg.  Id. at 320.  Vega also stated
that his back pain had returned since stopping physical therapy.
Id.  Dr. Colon diagnosed his skin condition as tinea versicolor

7

and prescribed clotrimazole. Id. Dr. Colon prescribed Naprosyn

for Vega's back pain and re-referred him to physical therapy.

Id.

On November 24, 2009, Vega went to Dynamic Physical Therapy

Services for an assessment of his low back pain and right heel

pain. Id. at 458. He was recommended to attend physical therapy

twice weekly for four weeks to address his functional deficits.

Id.

On September 30, 2009, Vega saw Christian D. Gonzalez, M.D.

("Dr. Gonzalez") complaining of continued low back pain. Id. at

464. Dr. Gonzalez noted Vega's diagnosis of lumbar facet

arthropathy and performed a diagnostic medical branch nerve block

of the lumbar spine. Id. Dr. Gonzalez stated that if the test

results were positive, he would perform Radiofrequency Lesioning

Therapy of the medial branch nerve. Id. Vega followed up with

Dr. Gonzalez on January 11, 2010, stating that his back pain did

not improve after receiving the injections, and indeed worsened.

Id. at 466. Dr. Gonzalez prescribed tramadol and Flexeril for

pain control, and noted that further intervention through

Radiofrequency Lesioning Therapy would not be of any benefit.

Id.

On January 14, 2010, Vega saw Miguel Olmedo, N.P. ("Mr.

Olmedo"), a colleague of Dr. Colon with whom Vega met regularly

for counseling and medication management. Id. at 472. Vega

reported improvements in his depression since his son moved in with him.  Id.  Vega also reported making progress with several job prospects and said that he had other interviews lined up. Id.  Vega was advised to keep his scheduled appointment with the mental health professionals in the office and to continue on Celexa and Geodon to treat his depression.  Id.; id. at 474.

On March 4, 2010, Vega saw Jermias DeOliveira, C.N.S. (Mr. DeOliveira"), a colleague of Dr. Colon, and reported he had just returned from a vacation in Puerto Rico.  Id. at 475.  Mr. DeOliveira reported continued depression and told Vega to continue on Celexa and Geodon and contact his therapist.  Id. Mr. DeOliveira noted that Vega was alert and oriented, not hopeless, not hearing voices, not paranoid, and had appropriate behavior and good self care.[1]  Id.

## II.    LEGAL STANDARD

### A.    Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, remand or reverse a decision of the Commissioner. The court must make its decision based on the pleadings and transcript of the record before the Commissioner; "[t]he findings

---

[1] The record and the hearing officer's decision also contain visits by Vega to doctors and other medical professionals not specifically mentioned herein.  See id. at 16-19.  These records contain medical history and evaluations consistent with those taken and completed by the medical professionals discussed previously.

of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); see Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The First Circuit has clarified this standard as requiring a court to uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriquez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). As it is the role of the hearing officer to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in reviewing the record. Id. Complainants face a difficult battle in challenging the Commissioner's determination because, under the substantial evidence standard, the Court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriquez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citations omitted).

**B.    Social Security Disability Standard**

An individual is considered disabled if he is "[unable] to engage in any substantial gainful activity by reason of any

10

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a five-step sequential analysis to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the severity of the impairment meets or equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education, and work experience. <u>Id.</u>

The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Social Security Act. <u>Goodermote</u> v. <u>Secretary of Health & Human Servs.</u>, 690 F.2d 5, 7 (1st Cir. 1982). Once the claimant has established that he is unable to return to his former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy. <u>Id.</u>

## III.    THE HEARING OFFICER'S DECISION

Applying the five-step analysis, the hearing officer, at the
first step, found that Vega had not engaged in substantial
gainful activity since the alleged onset date of September 11,
2002.  Admin. R. 13.  At the second step, the hearing officer
found that Vega's history of hand injuries, glaucoma, back pain,
depression, anxiety and Intermittent Explosive Disorder
constituted "severe impairments" during the relevant time period.
Id.  At the third step, the hearing officer found that none of
these impairments, however, met or medically equaled any of the
listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
Id. at 14.  At the fourth step, the hearing officer held that
Vega retained the residual functional capacity to perform light
work, but noted that he can perform no more than occasional
forceful grasping or twisting with the right, dominant hand and
wrist.  Id. at 15.  The hearing officer further concluded that
Vega could do work that does not require close visual acuity and
can tolerate no more than occasional interaction with co-workers
and supervisors, with no interaction with the general public.
Id.  Vega could perform simple, one-to-two step tasks.  Id.

At the fifth step, based on this residual functional
capacity, the hearing officer found that Vega could perform work
that exists in significant amounts in the national economy,
including jobs such as inserter of advertising supplements,

12

office cleaner, laundry sorter, assembler, and inspector. <u>Id.</u> at

20. The hearing officer therefore concluded that Vega had not

been disabled from September 11, 2002, to the date of the hearing

officer's decision. <u>Id.</u>

## IV. ANALYSIS

Unfortunately, the paucity of the hearing officer's

reasoning here turns what should have been a routine case into a

very close call indeed.

Vega contends that the hearing officer failed to apply the

proper legal framework and sufficiently support his determination

that Vega's testimony regarding his symptoms was only "somewhat"

credible. Vega Mem. 11. The Commissioner argues that the

hearing officer correctly assessed Vega's credibility in

accordance with the regulations and properly applied the legal

framework of the First Circuit in evaluating Vega's subjective

symptoms. Def.'s Mem. Law Supp. Mot. Order Affirming Decision

Comm'r ("Def.'s Mem.") 11, ECF No. 19.

When a claimant has a medically-determinable severe physical

impairment that is of less severity than the impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the

hearing officer must consider the impact of the related symptoms,

including pain, on the claimant's residual functional capacity.

<u>See</u> 20 C.F.R. § 404.1529(d)(4); <u>Avery</u> v. <u>Secretary of Health and</u>

<u>Human Servs.</u>, 797 F.2d 19, 22-23 (1st Cir. 1986). The

13

regulations recognize that a claimant's pain may be more severe

than the objective medical evidence reflects.  The regulations

therefore provide six factors to consider when the claimant

alleges pain or other symptoms.  These factors were originally

published in the Social Security Administration's Program

Operations Manual System (POMS) DI T00401.570 (1985), and then

adopted by the First Circuit in <u>Avery</u>, 797 F.2d at 26, as the

standard for evaluating pain, thereafter being referred to in

this Circuit as the <u>Avery</u> factors.  Thus, where a claimant

alleges pain of a greater severity than the objective medical

evidence suggests, the <u>Avery</u> factors require a hearing officer to

investigate:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) Treatment, other than medication, for relief of pain; (5) Functional restrictions; and (6) The claimant's daily activities.

<u>Id.</u> at 29.  The hearing officer "must consider all of the

claimant's statements about his symptoms, including his

subjective allegations of pain and its effect on his daily life

and ability to work."  <u>Anderson</u> v. <u>Astrue</u>, 682 F. Supp. 2d 89, 97

(D. Mass. 2010) (Gorton, J.) (citing 20 C.F.R. § 404.1529(a)).

     If a hearing officer decides to discredit a claimant's

allegations regarding the claimant's pain and symptoms, the

hearing officer must articulate specific and adequate reasons for

14

doing so. <u>Da Rosa</u> v. <u>Secretary of Health & Human Servs</u>, 803 F.2d 24, 26 (1st Cir. 1986). When a hearing officer makes specific findings as required by law, his credibility determination is entitled to deference as he observed and evaluated the claimant in the first instance. <u>Amaral</u> v. <u>Commissioner of Soc. Sec.</u>, 797 F. Supp. 2d 154, 161-62 (D. Mass. 2010) (citing <u>Frustaglia</u> v. <u>Secretary of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987)).

The parties disagree primarily on two issues: (1) the mandate imposed on the hearing officer by <u>Avery</u> - i.e., whether <u>Avery</u> requires the hearing officer explicitly to address each factor in his decision, or whether it is sufficient if the hearing officer inquires into each factor, but writes only a conclusory summary of his findings in the decision; and (2) the specificity and thoroughness with which the hearing officer must support his credibility determination.

### A.   **<u>Avery</u> Factors**

In 2005, this Court affirmed the denial of disability benefits in <u>Rand</u> v. <u>Barnhart</u>, 357 F. Supp. 2d 361 (D. Mass. 2005). In <u>Rand</u>, the hearing officer found the claimant's subjective complaints of pain lacked credibility, but the hearing officer did not cite and discuss all the <u>Avery</u> factors in reaching this determination. <u>Id.</u> at 368. The Court accorded the hearing officer's credibility determination "a certain degree of

deference," especially because it was "supported by specific findings taken from the relevant evidence at hand." Id. (citing Frustaglia, 829 F.2d at 195 (citing Da Rosa, 803 F.2d at 26)). The Court noted that the hearing officer questioned the claimant about her physical symptoms and pain, the medication prescribed and other treatment undertaken, the effect of the pain on her daily activities, and any aggravating factors that elevated her pain. Id. The Court acknowledged that "it would have been more helpful for the hearing officer explicitly to outline the Avery factors in making his credibility determination," but that it was "sufficiently clear from the record that [the hearing officer] thoroughly questioned [the claimant] according to those guidelines at the hearing," and considered that evidence in reaching his decision. Id.

At Vega's hearing on March 12, 2010, the hearing officer questioned Vega regarding the Avery factors. The hearing officer questioned Vega on the nature, location, and intensity of his pain. Admin. R. 40-43. For example, the hearing officer asked Vega, "[o]n a scale of zero to 10, with zero being no pain, and 10 being your highest level of pain, what is your base pain level?" Id. at 42. The hearing officer further inquired into aggravating factors, side-effects of medication, other treatment, and functional restrictions. Id. at 43-44. He asked, "[d]o you have side effects of the medicine that you take?," id. at 44,

and, "[b]esides the medicine, though, is there anything else you could do to help the pain?," id. at 44. Finally, the hearing officer inquired into Vega's daily activities. Id. at 45-53. The hearing officer asked about Vega's ability to cook, clean, and go shopping, id. at 46, his eating habits, id., and his ability to bathe and dress, id. at 53. The record also includes a substantial number of medical records which include both objective medical findings and statements made by Vega to the medical professionals which were considered by the hearing officer. See, e.g., id. at 281-85, 363, 472, 475.

The Court interprets Avery to require a hearing officer to inquire into and consider each Avery factor in reaching his determination, but does not read Avery to require an explicit written analysis of each factor. See Frustaglia, 829 F.2d at 195 ("The [hearing officer] thoroughly questioned the claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain, in conformity with the guidelines set out in Avery regarding the evaluation of subjective symptoms.") (internal citation omitted); see also Patilla v. Shalala, 21 F.3d 419, 420 (1st Cir. 1994) (unpublished table decision) (upholding a district court's affirmance of a denial of benefits where the hearing officer "complied with the requirements of Avery" by "question[ing] [the claimant] about her physical condition and

her daily activities," and by supporting his credibility determination with substantial evidence); Lill v. Astrue, 812 F. Supp. 2d 95, 103 (D. Mass. 2011) ("[The hearing officer] is not required expressly to discuss every factor enumerated in Avery." (citing Gordils v. Secretary of Health and Human Servs., 921 F.2d 327, 330 (1st Cir. 1990))); Dorego v. Astrue, Civil Action No. 10-11768-DPW, 2012 WL 603196 (D. Mass. Feb. 24, 2012) (Woodlock, J.) ("[T]he First Circuit has established no requirement that [a hearing officer] expressly address each factor in her written decision." (citing Shields v. Astrue, Civil Action No. 10-10234-JGD, 2011 WL 1233105, at *11 (D. Mass. Mar. 30, 2011) (Dein, M.J.) ("[T]here is no requirement that [the hearing officer] make specific findings regarding each of the [Avery] factors in his written decision."); Graham v. Barnhart, Civil Action No. 02-243-PB, 2006 WL 1236837, at *8 (D.N.H. May 9, 2006) ("[A hearing officer] complies with Avery if he explores the factors at the administrative hearing."); Braley v. Barnhart, Civil Action No. 04-176-B-W, 2005 WL 1353371, at *6 (D. Me. June 7, 2005) ("[The claimant] points to no First Circuit authority for the proposition that [a hearing officer] must slavishly discuss each Avery factor, and I find none.")).

Although the hearing officer's questioning was adequate, his analysis in support of his conclusions was sparse. POMS DI T00401.570, as expressly endorsed by the First Circuit in Avery,

18

97 F.2d at 26, expects a "thorough discussion" of the medical and nonmedical evidence, including a claimant's subjective complaints of pain. While this Court concludes a more extensive explanation of the <u>Avery</u> analysis ought here have been given, the Court nevertheless holds the hearing officer's decision complied with <u>Avery</u> in light of his adequate inquiry into the <u>Avery</u> factors at the hearing - which this Court can infer the hearing officer considered in reviewing the evidence as a whole - and given the substantial evidence in support of his decision. <u>See</u> <u>Musto</u> v. <u>Halter</u>, 135 F. Supp. 2d 220, 228 (D. Mass. 2001) ("[A]lthough the inquiry undertaken by the administrative law judge could have been more thorough, and his characterization of [the claimant's] testimony casts it in the light least favorable to [the claimant's] position, the characterization of [the claimant's] daily activities by the administrative law judge is not so flawed as to warrant remand.") (citations omitted).

**B. Credibility Determination**

This still leaves the issue of the sufficiency of the hearing officer's credibility determination.

At the administrative hearing, Vega stated that his lower back was in constant pain; he explained that his level of pain on a scale of zero to ten was generally a ten, although reduced to seven or eight when he took pain medication. Admin. R. 42. Vega stated that because of this pain, he spent most of every day

lying down in bed, getting up only occasionally to go to the bathroom. Id. at 44-45. He stated that he does not clean the house, cook, or go shopping. Id. at 46. His son brings home food for meals, either takeout or canned goods. Id.

The hearing officer found that Vega's statements concerning the intensity, persistence, and limiting effects of his pain were "somewhat credible," however, "not to the extent alleged." Id. at 19. The hearing officer noted that Vega had a "conservative history treatment for the past several years" and that "objective findings [of pain in his right hand and forearm and lower back] have been minimal." Id. The hearing officer pointed out that in January 2010 at his medical appointment with Mr. Olmedo, Vega stated that he was feeling better and making progress with several job prospects and interviews. Id. at 19 (citing id. at 472). The hearing officer further observed that Vega had taken a trip to Puerto Rico in early 2010. Id. at 19 (citing id. at 475).

In Bazile v. Apfel, 113 F. Supp. 2d 181 (D. Mass. 2000), this Court detailed what is required of a hearing officer when making credibility determinations. Citing the Ninth Circuit, the Court explained that it is insufficient to make general findings that a claimant's testimony is not credible; rather, the hearing officer "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Bazile, 113 F.

20

Supp. 2d at 187 (citing <u>Lester</u> v. <u>Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).  The Court noted that the First Circuit had not spoken clearly on the level of specificity required, but the Court found support for a stricter credibility standard in the First Circuit's decision in <u>Da Rosa</u>, 803 F.2d 24, and its progeny.  <u>Bazile</u>, 113 F. Supp. 2d at 187.

The claimant in <u>Bazile</u> suffered from back pain, knee pain and migraines, which interfered with her ability to work.  <u>Id.</u> at 183.  The claimant testified that her pain caused her to spend most of the day lying down in bed and precluded her from doing simple household chores or even showering on her own.  <u>Id.</u> at 186.  The hearing officer found Bazile's testimony not "fully credible" because she "had positive Waddell signs for exaggeration of her symptoms . . . , has received minimal medical treatment since May 1992, . . . [and] was noted to have minimal symptoms [in May 1992]."  <u>Id.</u> at 186-87.

The Court noted that, "[a]t first blush, the [hearing officer] may appear to have satisfied the <u>Da Rosa</u> requirement," but went on to hold that the general reasons provided by the hearing officer only supported discrediting portions of Bazile's testimony, but not all of it.  <u>Id.</u> at 187.  The Court therefore held that the hearing officer committed legal error by failing to give Bazile's testimony of her daily living activities due consideration in determining her residual functional capacity.

Id. at 188.

Bazile is distinguishable from the present case, albeit by the narrowest of margins.  This Court in Bazile stated, "[m]ost significantly, there is no evidence that impugns Bazile's description of her daily living activities."  Id. at 187.  Yet in this case, the hearing officer noted that despite Vega's testimony that his back pain forced him to lie in bed constantly throughout the day and precluded him from doing household chores, Vega went to Puerto Rico in 2010 and noted that he had several job prospects and interviews.  Admin R. 19.  This specific evidence cited by the hearing officer, albeit minimal, is enough to impugn Vega's statements about the severity of his pain and its impact on his daily living activities.  The hearing officer did not discredit Vega's testimony of pain entirely, but rather found that his functional limitations were "not [credible] to the extent alleged" in light of this evidence.  Id.

While a contrary decision might well have been reached in this case, and such a decision would certainly be reasonable, it is not for this Court to re-weigh the evidence.  See Lill, 812 F. Supp. 2d at 103 ("[I]t is not the function of this Court to second-guess credibility assessments of the hearing officer that are supported by sufficient evidence.") (citation omitted).  Thus, the hearing officer's credibility determination is entitled to deference by this Court.

**V.  CONCLUSION**

For all the reasons stated above, this Court DENIES Vega's motion for an order reversing the decision of the Commissioner, ECF No. 14, and GRANTS the Commissioner's motion to affirm the Commissioner's decision, ECF No. 18.  Judgment shall enter for the Commissioner.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE